**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JASON MILLER,** | : | |
| | : | |
| **Plaintiff** | : | **CIVIL NO. 3:CV-14-0301** |
| | : | |
| **v.** | : | **(Judge Caputo)** |
| | : | |
| **PAULA PRICE, *et al.*,** | : | |
| | : | |
| **Defendants** | : | |

**M E M O R A N D U M**

## I.    Introduction

Presently before the Court is a Motion to Dismiss Mr. Miller's Amended Complaint filed by Defendants Paula Price and Sgt. Younker.  (Doc. 20).  The Defendants move to dismiss Mr. Miller's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

Because Mr. Miller has failed to state a claim upon which relief can be granted against Paula Price and Sgt. Younker, the moving Defendants' motion to dismiss will be granted.  Additionally, pursuant to 28 U.S.C. § 1915(e)(2)(B), the Court will dismiss claims against the following Defendants:  the Pennsylvania Department of Corrections (DOC); DOC Health Care Provider; DOC Medical Staff; the Superintendent (Supt.) of SCI-Camp Hill; and Supt. Bickell.  Mr. Miller's Eighth Amendment claim that Lt. Maxwell, CO Owens and Physician Assistant (PA) McConnell were deliberately indifferent to his serious medical needs by depriving

him of his leg brace for seven (7) days while confined to the Restricted Housing Unit (RHU) in October 2013 is the sole remaining claim.

## II.     Standard of Review

A federal court may dismiss an action (or any part thereof) *sua sponte* under the screening provisions of 28 U.S.C. § 1915(e)(2)(B) and § 1915A if "the action is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief." *Ball v. Famiglio*, 726 F.3d 448, 452 (3d Cir. 2013). "The legal standard for dismissing a complaint for failure to state a claim under § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to a motion filed under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *See Davis v. Samuels*, No. 14-4162, 2015 WL 1412097, *2 (3d Cir. 2015)(citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)).

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion, the Court's role is not to consider whether a plaintiff will ultimately prevail. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). Rather, the Court must determine if a plaintiff has pled sufficient facts to raise reasonable expectations that discovery will reveal evidence in support of his claims. *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). The defendant bears the burden of

establishing that a plaintiff's complaint fails to state a claim.  *See Gould Elecs. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000).

A pleading that states a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The statement required by Rule 8(a)(2) must "'give the defendant fair notice of what the... claim is and the grounds upon which it rests.'"  *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) (per curiam) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 919 (2007)).  Detailed factual allegations are not required.  *Twombly*, 550 U.S. at 555, 127 S.Ct. at 1964.  However, mere conclusory statements will not do; "a complaint must do more than allege the plaintiff's entitlement to relief."  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).  Instead, the complaint must contain "'sufficient factual matter to show that the claim is facially plausible,' thus enabling 'the court to draw the reasonable inference that the defendant is liable for [the] misconduct alleged.'"  *Warren Gen. Hosp. V. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (quoting *Fowler*, 578 F.3d at 210).  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 668, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). While the court must accept the allegations of the complaint as true, it is "not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation."  *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (citations and internal quotation marks omitted).  "[W]here

the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.' Fed. Rule Civ. Proc. 8(a)(2)." Id. at 679, 129 S.Ct. at 1950.

The inquiry at the motion to dismiss stage is broken into three parts. Connelly, 809 F.3d at 787. First, the Court "must 'tak[e] note of the elements [the] plaintiff must plead to state a claim.'" Id. at 787 (quoting Iqbal, 556 U.S. at 675, 129 S.Ct. at 1947). Second, the Court "should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. (citations and internal quotations omitted). Lastly, "when there are well-pleaded factual allegations, the court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id. (citations, quotations and brackets omitted). A complaint is plausible on its face when its factual allegations allow a court to draw a reasonable inference that a defendant is liable for the harm alleged. Santiago v. Warminster Twp., 629 F.3d 121, 128 (3d Cir. 2010). The allegations of the complaint must "raise the right of relief above the speculative level." Thompson v. Real Estate Mortgage Network, 748 F.3d 142, 147 (3d Cir. 2014) (quoting Twombly, 550 U.S. at 555, 127 S.Ct. at 1965).

Dismissal is appropriate only if, accepting as true all the facts alleged in the complaint, a plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face," Twombly, 550 U.S. at 570, 127 S.Ct. at 1974, meaning enough factual allegations "'to raise a reasonable expectation that discovery will reveal evidence of'" each necessary element. Phillips, 515 F.3d at 234 (quoting

-4-

*Twombly*, 550 U.S. at 556, 127 S.Ct. at 1965).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678, 129 S.Ct. at 1949.  "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  *Id.* at 679, 129 S.Ct. at 150.  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility'."  *Id.* at 678, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 557, 127 S.Ct. at 1966).  In other words, a complaint must not only allege entitlement to relief, but must demonstrate such entitlement with sufficient facts to nudge the claim "across the line from conceivable to plausible."  *Id.* at 683, 129 S.Ct. at 1951.

In deciding a motion to dismiss, the Court should consider the complaint, exhibits attached to the complaint, and matters of public record.  *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).  The Court may also consider "undisputedly authentic" documents when the plaintiff's claims are based on the documents and the defendant has attached copies of the documents to the motion to dismiss.  *Pension Benefit Guar. Corp.*, 998 F.2d at 1196.

Finally, the Court must liberally construe a *pro se* litigant's pleadings.  *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).  *Pro se* pleadings are held to a less stringent standard than formal pleadings drafted by attorneys and are to be liberally construed.  *See Erickson*, 551 U.S. at 94, 127 S.Ct. at 2200; *Giles v. Kearney*, 571

F.3d 318, 322 (3d Cir. 2009).  "This means that we are willing to apply the relevant legal principle even when the complaint has failed to name it." *Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003).  When evaluating a *pro se* complaint, the Court must still "ensure that it has 'sufficient factual matter[,] accepted as true[,] to state a claim to relief that is plausible on [its] face.'" *Fantone v. Latini*, 780 F.3d 184, 193 (3d Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678, 129 S.Ct. at 1949) (internal quotation marks omitted).  Also *pro se* litigants are to be granted leave to file a curative amended complaint even when a plaintiff does not seek leave to amend, unless such an amendment would be inequitable or futile.  *See Estate of Lagano v. Bergen Cnty. Prosecutor's Office*, 769 F.3d 850, 861 (3d Cir. 2014).  However, a complaint that sets forth facts which affirmatively demonstrate that the plaintiff has no right to recover is properly dismissed without leave to amend.  *Grayson v. Mayview State Hospital*, 293 F.3d 103, 106 (3d Cir. 2002).

With this standard in mind, the following is the background to this litigation, as Mr. Miller alleges it in his Amended Complaint and the documents attached to it.

## III.    Background and Procedural History

Mr.  Miller, an inmate formerly housed at the Huntingdon State Correctional Institution (SCI-Huntingdon) in Huntingdon, Pennsylvania, commenced this action on February 9, 2014.[1]  (Doc. 1, Compl.)  He named Paula Price, Physician Assistant

---

[1] Mr. Miller was released from prison in January 2015.  (Doc. 35.)

(PA) Mark McConnell and Dr. Tavaras as defendants.  Shortly thereafter, Mr. Miller

filed an Amended Complaint. (Doc. 7, Am. Compl.)

Mr. Miller's Amended Complaint, filed March 17, 2014, consists of two (2)

separate complaint forms and fifty-eight (58) pages of supporting exhibits that are

not referenced in the Amended Complaint.  (*Id*.)  He names Mark McConnell, Lt.

Maxwell, CO Owens, Paula Price, Sgt. Younker, Todd Bickell (former

Superintendent of SCI-Huntingdon), "Head of the DOC/Camp Hill SCI", Dr.

Tavares, the "DOC Health Care Provider", and "DOC Medical Staff" as Defendants.[2]

(*Id*., ECF pp. 1, 2, 4 and 6.)   Mr. Miller's statement of facts is spartan at best, yet

the following allegations can be cobbled together with the aid of the attached

exhibits.

Mr. Miller describes himself as "a person with a disability".  (*Id*., ECF p. 3.)

He is paralyzed and frequently experiences tremors on his left side.  (*Id*., ECF p.13.)

Mr. Miller was issued a MAFO[3] ankle brace at SCI-Camp Hill in April 2012.  (*Id*.,

ECF p. 9.)  Mr. Miller is an experienced commercial interior/exterior painter, and in

March 2013, sought employment in the prison's "painting crew" or library.  (*Id*., ECF

p. 25.)  When wearing his MAFO brace, he is capable of doing "laps" in the exercise

yard.  (*Id*., ECF p. 54.)

---

[2]  Due to a docketing error, only Paula Price, Dr. Tavaras and Sgt. Younker were
identified as defendants.  As a result, only these defendants were served with the Amended
Complaint.  *See* Doc. 10.  That error will be addressed and remedied *infra.*

[3]  MAFO is an acronym for Molded Ankle-Foot Orthosis.

On April 17, 2013, Mr. Miller slipped and fell in the shower.  He injured his neck and back.  He seeks monetary relief from the DOC "for not having enough handicap showers."  (*Id*., ECF p. 3.)  He also seeks monetary relief from Sgt. Younker who allegedly told him to "stop faking and get up" when he fell.  (*Id*., ECF p. 4.)  Mr. Miller admits to receiving treatment for his injury since April 2013.  (*Id*., ECF p. 13.)

On May 3, 2013, Mr. Miller spoke to PA McConnell about his concerns that his pain medications were making him sick and caused him to pass out.  (*Id*., ECF p. 2.)  Grievance 463892 provides the following additional information.  (*Id*., ECF 35 and 50.)  On May 20, 2013, Mr. Miller received new medication.  (*Id*., ECF p. 35, Grievance 463892.)  After taking his medication for five days, he began to experience severe discomfort (vomiting, diarrhea, headaches, etc.).  He was treated by a Physician Assistant (other than PA McConnell) on May 28, 2013 after he fell in his cell.  (*Id*.)  On May 30, 2013, PA McConnell ordered additional medication for Mr. Miller.  The mornings of June 3 and 4, 2013, Mr. Miller refused his medication due to illness.  On June 4, 2013, he was seen at his cell for sick call by PA McConnell.  Mr. Miller asked PA McConnell "What the f___ are you trying to do to me!"  (*Id*., ECF p. 35.)  PA McConnell briefly spoke to him and then left without altering his medication. Mr. Miller claims that PA McConnell "ha[s] not been able to find a resolution to both ongoing chronic pain & new illness."  (*Id*.)  Mr. Miller's medications were changed on June 11, 2013 by another PA.  (*Id*., ECF p. 50.)  Mr. Miller appealed Grievance 463892 to the Secretary's Office of Inmate Grievances & Appeals (SOIGA).  (*Id*.,

ECF p. 62.)  His appeal was dismissed due to his failure to comply with the

provisions of DC-ADM 804, the DOC's Grievance Policy, because he did not provide

SOIGA with the required documentation for proper review.  (*Id*.)

At approximately 1600 hours on October 23, 2013, Mr. Miller was admitted to

the Restricted Housing Unit (RHU).  At the direction of Lt. Maxwell, his leg brace

was confiscated "until it cleared".  He was, however, permitted to have it for "rec

use." (*Id*., ECF p. 10.)  The following day PA McConnell stopped by Mr. Miller's cell.

Mr. Miller responded affirmatively when asked whether he needed his brace.  (*Id*.)

On October 27, 2013, Mr. Miller sent a request slip to the medical department

inquiring when his brace would be returned.  (*Id*., ECF p. 11.)  On October 28, 2013,

Mr. Miller filed Grievance 482828 complaining about the confiscation of his brace

and PA McConnell's failure to promptly return the brace.  (*Id*., ECF p. 10.)  The

following day Mr. Miller was advised that "[t]he PA re-ordered your splint for another

year." (*Id*., ECF p. 11.)  Mr. Miller acknowledges receipt of his brace on October 30,

2013.  (*Id*., ECF p. 3.)  He also claims that on October 27, 2013, he could not "get to

[his] property to retrieve [his] things" because CO Owens would not give him his

brace  (*Id*.)  The documents attached to the Amended Complaint do not suggest

whether or not Mr. Miller appealed Grievance 482828 to final review.

Next, Mr. Miller claims that on November 20, 2014,[4] while being treated for a

rectal abscess, PA McConnell made improper and humiliating remarks about him in

---

[4] It is noted that the Amended Complaint was filed on March 17, 2014.  (*Id*., ECF p. 5.)

the presence of others.  (*Id*., ECF p. 2.)  There are no documents attached to the Amended Complaint that provide further details as to this claim.

The remaining defendants, Superintendent Todd Bickell, Paula Price, the Superintendent of SCI-Camp Hill, Dr. Tavares, SCI-Huntingdon's contract Health Care Provider and DOC Medical Staff (other than PA McConnell) are not mentioned in the body of the Amended Complaint.  However, in the relief section of the Amended Complaint, Mr. Miller seeks monetary damages from Superintendent Todd Bickell "for not having responsible C/O's working at Huntingdon SCI and letting them get away with how they treat people with disabilities." (*Id*., ECF p. 4.)  Also, Supt. Bickell's name appears twice in the documents attached to the Amended Complaint, both times in connection with his response to grievances. *See Id*., ECF pp. 18 (Grievance 460714) and 20 (Grievance 461166).

Mr. Miller filed Grievance 460714 on May 21, 2013, concerning a May 6, 2013-sick call request concerning his medication.  (*Id*., ECF p. 54.)  He states he spoke to PA McConnell about his feelings of dizziness, blurred vision, restlessness and feeling "off balance". (*Id*.)  While "taking it easy doing laps" in the yard, he tripped and landed on his head.  (*Id*.)  He admits that after a "regrettable outburst" at medical staff he was placed in a psychiatric observation room.  (*Id*.)  On May 31, 2013, Paula Price, SCI-Huntingdon's Correctional Health Care Administrator (CHCA), responded to the grievance.  (*Id*., ECF p. 19.)  She noted that on during a May 6, 2013, sick call visit Mr. Miller reported that he did not want to take his medications because he "was convinced he had a spinal fusion in [his] lower back

and cancer in [his] neck." (*Id*., ECF p. 19.)  She advised that his May 3, 2013 x-ray results were normal.  Mr. Miller requested an MRI and to be seen by a specialist. When PA Gomes (non-defendant) tried "to explain the plan that the other PAC had for [his] treatment and that it takes time for the medication to work [Mr. Miller] became upset and walked out.  Th[is] does imply a refusal of treatment." (*Id*.)  She also noted that he did not report his symptoms of dizziness, etc., during his May 6, 2013 sick call visit. (*Id*.)  Mr. Miller's refusal to take his medication or speak from a staff member from the psychiatric department was also noted. (*Id*.)  On June 21, 2013, Supt. Bickell upheld CHCA Price's response to Grievance 460714. (*Id*., ECF p. 18.)  Mr. Miller's appeal to SOIGA was denied on August 27, 2013. (*Id*., ECF p. 34.)

As for Grievance 461166, Mr. Miller filed it on May 27, 2013, concerning the May 6, 2013-confiscation of his leg brace while housed in a medical observations cell and then a psychiatric observations cell. (*Id*., ECF p. 15.)  On June 3, 2013, Capt. Stevens responded to the grievance. (*Id*., ECF p. 39.)  He advised that the brace was taken from Mr. Miller "due to [him] being placed onto medical observation as a result of [him] threatening to harm himself.  The brace was removed to prevent you from using it for self-harm.  The leg brace was returned to you upon your release from close watch in the RHU.  The officers conducting the security check removed the brace until they verified through the medical department that you were authorized to retain it in the RHU.  This item has since been returned to your possession." (*Id*.)  On June 4, 2013, Mr. Miller requested to withdraw Grievance

461166.  (*Id.*, ECF p. 24.)  Yet, at some point he filed an appeal to Supt. Bickell who took no action on the appeal based on Mr. Miller's representation that he withdrew the grievance.  (*Id.*, ECF p. 20.)  On August 13, 2013, Mr. Miller's final appeal of the grievance to SOIGA was filed but no action was taken on it due to his failure to provide a signed and dated copy of his appeal to Supt. Bickell with his appeal to SOIGA. (*Id.*, ECF p. 61.)  No other information is provided relative to this grievance.

CHCA Paula Price, who is also named as a defendant but not mentioned in the text of the Amended Complaint, as noted above, is mentioned in the initial review of the Grievance 460714. (*Id.*, ECF p. 19.)  She is also mentioned in Grievance 463897.  (*Id.*, ECF p. 13, 48 - 49, 56 and 58.)  This grievance concerns the failure of CHCA Price, and others, to give Mr. Miller his leg brace when released from the psychiatric observation cell to the RHU in May 2013.  (*Id.*, ECF p. 13.)  The Grievance Coordinator Connie Green rejected the grievance as being untimely submitted.  (*Id.*, ECF pp. 12.)  When Mr. Miller argued that the grievance was indeed timely, Ms. Green advised him that "his only option is to appeal 463987." (*Id.*, ECF p. 27.)  At final review, SOIGA agreed that this grievance "should not have been dismissed as being untimely due to [Mr. Miller] being ATA; however, the dismissal stands as [he] did not provide the required documentation.  Specifically, [he] did not provide an appeal to final review for [this] grievance."  (*Id.*, ECF p. 17.)

On April 11, 2014, the Court ordered the Amended Complaint served on the Defendants named therein.  (Doc. 10.)  As noted earlier, due to a clerical error, not all of the Defendants were identified on the docket and thus were not served.  An

April 14, 2014, docket entry reflects that Summons were issued only as to PA Mark McConnell, Paula Price, Dr. Tavaras and Younker.  (Doc. 13.)  On June 24, 2014, Waiver of Service was returned on behalf of Younker and Price.  There is no indication as to the service status of PA McConnell.  On July 1, 2014, the Waiver of Service was returned unexecuted as to Dr. Tavaras.  (Doc. 18.)  After Mr. Miller failed to provide the court with the necessary information to effect service on Dr. Tavaras, he was dismissed from the action pursuant to Fed. R. Civ. P. 4(m).  (Doc. 19.)

On July 21, 2014, Defendants Price and Younker filed a motion to dismiss the Amended Complaint.  (Doc. 20).  After filing his opposition to the Defendants' motion (Doc. 29), Mr. Miller filed a motion to dismiss Sgt. Younker as a defendant and add Lt. Maxwell and PA Debbie as defendants.  (Doc. 32.)  Although he did not file a brief in support of his motion, he filed forty-four pages of exhibits.  (Doc. 32-1.) As Mr. Miller has already amended his complaint once by right, any further amendment must be with the leave of court.  (Doc. 28.)

On January 13, 2015, Mr. Miller advised the Court of his release from prison and new address.  (Doc. 35.)  On February 6, 2016, Attorney Michael S. Pileggi entered his appearance on behalf of Mr. Miller.  (Doc. 41.)


## IV.    Discussion

Defendants Price and Younker move to dismiss the Amended Complaint on the following grounds: (1) failure to exhaust his claims prior to filing this action; (2) failure to state a cognizable constitutional claim; and (3) failure to allege Defendant

Price's personal involvement.  (Doc. 16, Br. in Supp. Mot. to Dismiss).  Mr. Miller

filed a brief in opposition arguing that any failure to exhaust his administrative

remedies should be excused due to SCI-Huntingdon's Grievance Officer's (Connie

Green) interference with his exhaustion efforts.[5]  (Doc. 29, Pl.'s Opp'n Br.)

> To the extent claims against other defendants are subject to dismissal

pursuant to 28 U.S.C. § 1915(e)(2)(B), they will be addressed *sua sponte*.


**1.**     ***Exhaustion under the PLRA***

> Pursuant to the Prison Litigation Reform Act (PLRA), before a prisoner may

bring a civil rights action pursuant to 42 U.S.C. § 1983, or any other federal law, he

must exhaust all available administrative remedies.  *See* 42 U.S.C. § 1997e; *Porter

v. Nussle,* 534 U.S. 516, 524, 122 S.C. 983, 988, 152 L.Ed.2d 12 (2002).  "[T]here is

no question that exhaustion is mandatory under the PLRA and that unexhausted

claims cannot be brought in court."  *Jones v. Bock*, 549 U.S. 199, 212, 127 S.C.

910, 918-19, 166 L.Ed.2d 798 (2007); *Pearson v. Sec'y Dep't of Corr.*, 775 F.3d

598, 602 (3d Cir. 2015) (exhaustion of prison administrative remedies is mandatory

under the PLRA).  Whether an inmate has exhausted administrative remedies is a

question of law that is to be determined by the court, even if that determination

---

[5] Mr. Miller's attempts to introduce new claims, allegations, or defendants through the submission of his brief in opposition shall be disregarded.  "It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss."  *Hughes v. United Parcel Service, Inc.*, No. 15-1690, 2016 WL 386220, at *4 (3d Cir. Feb. 1, 2016) (quoting *Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988)).

requires resolution of disputed facts. *Small v. Camden Cnty.*, 728 F.3d 265, 271 (3d Cir. 2013).

There is no "futility" exception to the administrative exhaustion requirement. *Ahmed v. Dragovich*, 297 F.3d 201, 206 (3d Cir. 2002)(citing *Nyhuis v. Reno*, 204 F.3d 65, 78 (3d Cir. 2000)).  The exhaustion requirement of the PLRA is one of "proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 84, 126 S.Ct. 2378, 2383, 165 L.Ed.2d 368 (2006).  Failure to substantially comply with procedural requirements of the applicable prison's grievance system will result in the procedural default of a claim. *Spruill v. Gillis*, 372 F.3d 218, 227-32 (3d Cir. 2004).

Dismissal of an inmate's claim is appropriate when the prisoner has failed to exhaust his available administrative remedies before bringing a civil-rights action. *Oriakhi v. United States*, 165 F. App'x 991, 993  (3d Cir. 2006) (nonprecedential) (citing *Ahmed*, 297 F.3d at 209 & n. 9) ("Indeed, there appears to be unanimous circuit court consensus that a prisoner may not fulfill the PLRA's exhaustion requirement by exhausting administrative remedies after the filing of the complaint in federal court.")  Furthermore, the filing of an amended complaint after an unexhausted claim is presented to the court does not cure the infirmity.  *See Ahmed*, 297 F.3d at 209 (holding that "[w]hatever the parameters of 'substantial compliance' referred to there, it does not encompass a second-step appeal five months late nor the filing of a suit before administrative exhaustion, however late, has been completed.  It follows that Ahmed cannot cure the defect in his action by the proffered amendment of the complaint.").  Finally, the PLRA exhaustion

requirement does not apply to prisoners who file a timely complaint after release from prison, but does apply to prisoners who file a complaint while in prison and are subsequently released.  *Id.*, 297 F.3d at 210.

A prisoner need not exhaust every administrative remedy, only those which are available to him.  *Camp v. Brennan*, 219 F.3d 279, 281 (3d Cir. 2000); *accord Brown v. Croak*, 312 F.3d 109, 112-113 (3d Cir. 2002).  "A grievance procedure is not available even if one exists on paper if the defendant prison officials somehow prevent a prisoner from using it."  *Mitchell v. Horn*, 318 F.3d 523, 529 (3d Cir. 2003). Likewise, "[r]emedies that are not reasonably communicated to inmates may be considered unavailable for exhaustion purposes."  *Small*, 728 F.3d at 271 (citing *Brown*, 312 F.3d at 113).

A prisoner is not required to allege that administrative remedies have been exhausted.  *Ray v. Kertes*, 285 F.3d 287 (3d Cir. 2002).  Failure to exhaust available administrative remedies is an affirmative defense.  (*Id.*)  As such, it must be pleaded and proven by the Defendant.  *Brown,* 312 F.3d at 111.

The court will take judicial notice of the DOC's policy statement, DC-ADM 804, captioned "Inmate Grievance System."[6]  It consists of a three-step procedure for the resolution of inmate grievances.  The procedure requires that inmates resolve any issues concerning the conditions of their confinement by first submitting a grievance for "Initial Review" to the Facility Grievance Coordinator using an official form "within 15 working days after the event upon which the claim is based."  If the

_____

[6]  DC-ADM 804 is publically available at the DOC's website at www.cor.pa.gov.

Grievance Coordinator's decision is unfavorable, the inmate may appeal the decision to the Facility Manager within 10 working days.  If that appeal is unsuccessful, the inmate may then appeal to the Secretary's Office of Inmate Grievances and Appeals (SOIGA) within 15 working days.  After this appeal, the inmate has exhausted his available administrative remedies.  *See Spruill*, 372 F.3d at 232; *see also Booth v. Churner*, 206 F.3d 289, 292 n.2 (3d Cir. 2000).

To the extent Defendants Younker and Price argue that Mr. Miller failed to exhaust his administrative remedies because "[a]t no point does [Mr. Miller] establish[ ] that he appealed [his grievances] to final review," (Doc. 21), their argument is legally meritless.  As the moving defendants in their supporting brief note, "[f]ailure to exhaust must be plead and *proven by the defendants because it is an affirmative defense*."  (*Id.*, ECF p. 10) (citing *Ray*, 285 F.3d at 295) (emphasis added).  Contrary to Defendants' assertion, Mr. Miller is not required to plead the exhaustion of his various claims.  (*Id.*)  Defendants may carry their burden by either submitting evidence of Mr. Miller's exhaustion (or lack there of), or may rely on the documents attached to the Amended Complaint.  They did neither.  With that said, a careful review of the documents attached to the Amended Complaint make clear that some of Mr. Miller's claims against CHCA Price and PA McConnell are subject

to dismissal due to his failure to properly exhaust administrative available remedies.[7]

Mr. Miller claims PA McConnell was deliberately indifferent to his medical concerns that his medications were causing him significant negative side effects. *See* Doc. 7, ECF pp. 2 and 13, Grievance 463892.  This grievance was denied at final review by SOIGA due to his failure to provide required documentation with his appeal.  *See Id.*, ECF p. 62.  Mr. Miller fails to suggest how SCI-Huntingdon's Grievance Coordinator impeded his ability to provide the required documentation with his final appeal to SOIGA.  Thus, based on the documentation attached to the Amended Complaint, Mr. Miller failed to properly exhaust his administrative remedies as to this claim against PA McConnell.

Next, to the extent that CHCA Price is mentioned in Grievance 463897 (*Id.*, ECF p. 13), documents supplied by Mr. Miller demonstrate this grievance also was not properly exhausted.  The grievance concerns Mr. Miller's lack of access to his MAFO in May 2013 for approximately twenty (20) days while he was housed in the POC and then the RHU.  He claims medical staff, including CHCA Price, failed to timely approve his possession of the brace.  (*Id.*)  Although the grievance was initially rejected by the Grievance Coordinator, Mr. Miller was instructed that if he was dissatisfied with the initial grievance response he could appeal the decision.

---

[7]  Where an inmate's failure to exhaust his administrative remedies is "apparent from the face of the complaint," *sua sponte* dismissal by the Court is appropriate.  *Ray* 285 F.3d at 297; *see also Thomas v. Brinich,* 579 F. App'x 60, 62 (3d Cir. 2014) (stating taht dismissal of a § 1983 claim for failure to exhaust is appropriate where the complaint reveals, on its face, that exhaustion did not occur).

(*Id*., ECF p. 27.)  He did not appeal the grievance to final review.  The Chief

Grievance Officer held that although his grievance should not have been denied as

untimely, "the dismissal stands as [he] did not provide an appeal to final review" of

this grievance.  (*Id*., ECF p. 17.)  Plaintiff does not provide any evidence to suggest

how the Grievance Officer impeded his ability to exhaust this grievance.

Accordingly, the claims raised in Grievance 463897, which include those against

CHCA Price, are dismissed due to Mr. Miller's failure to properly exhaust his

administrative remedies as to these claims.

Mr. Miller will not be granted leave to amend his complaint as to the identified

unexhausted claims against CHCA Price and PA McConnell.  *See Ahmed*, 297 F.3d

at 209.


### 2.      Verbal Harassment by Sgt. Younker.

Sgt. Younker told Mr. Miller to "stop faking and get up," when he fell in the

shower on April 17, 2013.  (Doc. 7, ECF p. 4.)  The documents attached to the

Amended Complaint do not shed any light as to additional facts concerning Mr.

Miller's claim against Sgt. Younker.  Mr. Miller admits to receiving treatment for his

injury since "April 16, 2013".  (*Id*., ECF p. 13.)

To the extent Plaintiff seeks to set forth a claim of verbal harassment based

on Sgt. Younker's statement, any such claim is subject to dismissal.  It is

well-established that mere words spoken to a prisoner by a correctional officer, even

when those words are harsh, do not amount to a violation of the prisoner's civil

rights by the officer. *Johnson v. Glick*, 481 F.2d 1028, 1033 n. 7 (2d Cir. 1973).

"Standing alone, simple verbal harassment does not constitute cruel and unusual

punishment, deprive a prisoner of a protected liberty interest or deny a prisoner

equal protection of the laws." *DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000).

Accordingly, any allegation of verbal harassment fails to state a cognizable claim.

Accordingly, Mr. Miller's claims against Sgt. Younker will be dismissed for

failure to state a claim.[8] He will not be permitted to amend his complaint as to this

claim against Sgt. Younker as it would be futile.

### 3. Personal Involvement of CHCA Price, Supt. Bickell, and the Supt. of SCI-Camp Hill.

To successfully state a § 1983 claim, a plaintiff must allege: (1) the conduct

complained of was committed by a person acting under color of state law; and (2)

the conduct complained of deprived the plaintiff of rights, privileges, or immunities

secured by the laws or the Constitution of the United States. *Rehberg v. Paulk*, ____

U.S. ____, ____C, 132 S.Ct. 1497, 1501, 182 L.Ed.2d 593 (2012); *Barkes v. First*

*Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014).

To establish liability for the deprivation of a constitutional right, an individual

government defendant must have personal involvement in the alleged wrongs;

liability cannot be predicated based on the unconstitutional conduct of their

---

[8] Although not the basis of the Court's decision to dismiss Mr. Miller's claims against
this Defendant, the Court notes that since the filing of his brief in opposition of Defendants'
motion to dismiss, Plaintiff filed a motion, *inter alia,* to dismiss all claims against this
defendant. *See* Doc. 32. However, as Mr. Miller failed to brief this motion in compliance
with Local Rule 7.5, it was deemed withdrawn.

subordinates under a theory of *respondeat superior*. *Iqbal*, 556 U.S. at 676, 129 S.Ct. at 1948; *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). "It is uncontested that a government official is liable only for his or her own conduct and accordingly must have had some sort of personal involvement in the alleged unconstitutional conduct." *Argueta v. U.S. I.C.E.*, 643 F.3d 60, 71 - 72 (3d Cir. 2011). "[I]t is not enough for a plaintiff to argue that the constitutionally cognizable injury would not have occurred if the superior had done more than he or she did." *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989). This personal involvement must be "shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir.1988); *see also A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (noting that "a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations"). A defendant "cannot be held responsible for a constitutional violation which he or she neither participated in nor approved." *C.H. ex rel. Z.H. v. Oliva*, 226 F.3d 198, 201–202 (3d Cir. 2000).

Likewise, a state prisoner's allegation that prison officials and administrators responded inappropriately, or failed to respond to a complaint or grievance, does not establish their personal involvement in the underlying unconstitutional conduct. *See Rode*, 845 F.2d at 1207 - 08 (finding that after-the-fact review of a grievance is insufficient to demonstrate the actual knowledge necessary to establish personal

involvement); *Mincy v. Chmielsewski*, 508 F. App'x 99, 104 (3d Cir. 2013)

(nonprecedential) (finding "an officer's review of, or failure to investigate, an inmate's

grievances generally does not satisfy the requisite personal involvement"

requirement); *Pressley v. Beard*, 266 F. App'x 216, 218 (3d Cir. 2008)

(nonprecedential) ("The District Court properly dismissed these [supervisory]

defendants and any additional defendants who were sued based on their failure to

take corrective action when grievances or investigations were referred to them.");

*Brooks v. Beard*, 167 F. App'x 923, 925 (3d Cir. 2006) (nonprecedential) (allegations

that prison officials and administrators responded inappropriately to inmate's

later-filed grievances do not establish the involvement of those officials and

administrators in the underlying deprivation); *Burnside v. Moser*, 138 F. App'x 414,

416 (3d Cir. 2005) (nonprecedential) (failure of prison official to process

administrative grievance did not amount to a constitutional violation or personal

involvement in the alleged constitutional deprivation grieved).

Defendants correctly note that CHCA Price is not mentioned in the Amended

Complaint, other than in the caption.  Mr. Miller does not make any specific

assertions concerning CHCA Price and does not include her in his claim for relief.

*See* Doc. 7, ECF pp. 1 - 7.  Thus, he fails to provide her with "fair notice of what

the... claim is and the grounds upon which it rests.'" *Erickson,* 551 U.S. at 93, 127

S.Ct. at 2200.  However, giving Mr. Miller's pleading the most liberal of construction,

the Court notes that CHCA Price's name is found within the documents attached to

the Amended Complaint in connection with several grievances.  The Court has

already addressed Mr. Miller's failure to exhaust his administrative remedies with respect to Grievance 463897.  (*Id*., ECF pp. 13 and 17).  The next grievance connected to CHCA Price is Grievance 460714.  Mr. Miller filed Grievance 460714 on May 21, 2013, claiming he fell in the "yard" while doing "laps" due to side effects of his medications.  He also claims that he did not refuse his medication on two occasions.  (*Id*., ECF p. 54.)  CHCA Price responded to the grievance and found it without merit.  (*Id*., ECF p. 19.)  Supt. Bickell upheld CHCA Price's response to the grievance.  (*Id*., ECF p.18.)  Ultimately, Mr. Miller's grievance was denied at final review by SOIGA.  (*Id*., ECF p. 34.)  Even when considering CHCA Price's involvement in this exhausted grievance, Mr. Miller fails to demonstrate her personal involvement in the underlying unconstitutional claims contained within Grievance 460714 as she is not alleged to have been involved with any decision concerning his medical care at that time, or to have denied him access to medical care, or interfered with his prescribed medical care.  Her only involvement was to respond to the grievance.  Participation in the after-the-fact review of a grievance or appeal is not enough to establish personal involvement.  *See Rode,* 845 F.2d at 1208.  Thus, all claims against CHCA Price will be dismissed.  Mr. Miller will not be permitted to amend his complaint as to this claim against CHCA Price as it would be futile.

Although listed as a defendant in this action, there are no allegations concerning the Superintendent of SCI-Camp Hill in the Amended Complaint. Additionally, none of the documents attached to the Amended Complaint reference the Superintendent of SCI-Camp Hill.  Accordingly, all claims against this defendant

will be dismissed.  *See* Fed. R. Civ. P. 8(a); *Iqbal*, 556 U.S. at 676, 129 S.Ct. at 1948 (noting that, because vicarious liability is inapplicable in a § 1983 suit, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution").

Similarly, all claims against Supt. Bickell are subject to dismissal.  This defendant's name does not appear in the caption of the Amended Complaint or in Mr. Miller's statement of the claim.  Rather, Supt. Bickell is only referenced in the claim for relief.  (*Id.*, ECF p. 4.)  Mr. Miller claims he is entitled to damages from Supt. Bickell "for not having responsible C/O's working at Huntingdon SCI and letting them get away with how they treat people with disabilities."  (*Id.*)  Clearly, Mr. Miller's claim against Supt. Bickell is premised solely on the theory of *respondeat superior*. As discussed above, liability under § 1983 cannot be based on *respondeat superior*. *Iqbal*, 556 U.S. at 676, 129 erS.Ct. at 1948; *Argueta*, 643 F.3d at 71 - 72.  To the extent that Supt. Bickell was involved in the review of grievances attached to the Amended Complaint (Grievances 460714 and 461166),[9] he is not alleged to have participated in the alleged constitutional violations subject of those grievances. Accordingly, Mr. Miller has failed to adequately allege the personal involvement of either CHCA Price, Supt. Bickell or the Superintendent of SCI-Camp Hill.

**4.     The DOC, DOC's Health Care Provider, and the DOC
         Medical Staff are not entities amenable to suit under
         42 U.S.C. § 1983.**

---

[9]  It is noted that documents attached to the Amended Complaint demonstrate that Grievance 461166 was withdrawn by Mr. Miller.  (*Id.*, ECF pp. 20, 24, 39, 61).

The Commonwealth of Pennsylvania and its agencies are not "persons" for the purpose of sustaining a § 1983 action.  *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 2312, 105 L.Ed.2d 45 (1989); *Pettaway v. SCI Albion*, 487 F. App'x 766, 768 (3d Cir. 2012).  Accordingly, Mr. Miller's claims against the DOC, the DOC Health Care Provider, and the DOC Medical Staff are subject to dismissal as they are not "persons" amendable to suit under 42 U.S.C. § 1983.

### 5.   Remaining Eighth Amendment Medical Claim against Lt. Maxwell, CO Owens and PA McConnell.

"To act with deliberate indifference to serious medical needs is to recklessly disregard a substantial risk of serious harm."  *Giles,* 571 F.3d at 330.  Further,

> "prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners." *Durmer v. O'Carroll*, 991 F.2d 64, 67 (3d Cir.1993). Courts will "disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment[,] which remains a question of sound professional judgment." *Inmates of Allegheny Cty. Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979) (internal alterations, quotation marks omitted). "[M]ere disagreement as to the proper medical treatment" is insufficient to state a constitutional violation. *Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004) (internal quotation marks omitted).

*Smith v. Bolova*, No. 15-2480, 2015 WL 8536716, at *2 (3d Cir. Dec. 11, 2015).

Mr. Miller alleges that on October 23, 2013, when he was admitted to the RHU, Lt. Maxwell ordered the confiscation of his leg brace "until it cleared".  (*Id.*, ECF p. 10.)  The following day Plaintiff told PA McConnell that he needed the brace. Once medical approved his need for the brace it was returned to him.  He was denied the use of his brace for seven days.  (*Id.*, ECF p. 3.)  He also claims that

when CO Owens escorted him to the RHU property room, and Plaintiff saw his leg brace in a box, he requested it and CO Owens denied his request.  (Doc. 29, ECF pp. 6 and 7.)  Mr. Miller filed Grievance 482828 concerning these events.  (Doc. 7, ECF p. 10).

Based upon the foregoing, the Court will allow Mr. Miller's Eighth Amendment medical claim against Lt. Maxwell, CO Owens and PA McConnell to proceed.  The Court will issue a separate order directing service of the Amended Complaint on these remaining defendants.


**V.      Conclusion**

For the foregoing reasons, the Court grants the moving defendants Motion to Dismiss in its entirety.  Additionally, pursuant to 28 U.S.C. § 1915(e)(2)(B) claims against the DOC, DOC Health Care Provider, DOC Medical Staff, the Superintendent of SCI-Camp Hill, and Superintendent Bickell will be dismissed. "Leave to amend must generally be granted unless equitable considerations render it otherwise unjust."  *Arthur v. Maersk, Inc.*, 434 F.3d 196, 204 (3d Cir. 2006) (citation omitted).  Here, because further amendment as to the dismissed claims would be either inequitable or futile, Mr. Miller will not be granted leave to cure the identified deficiencies.

An appropriate Order follows.


                                                             **/s/ A. Richard Caputo**
                                                             **A. RICHARD CAPUTO**
                                                             **United States District Judge**

**Date: March   18   , 2016**