IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JASON MILLER, | : | |
| Plaintiff | : | CIVIL NO. 3:CV-14-0301 |
| v. | : | (Judge Caputo) |
| PAULA PRICE, *et al.*, | : | |
| Defendants | : | |

# M E M O R A N D U M

## I. Introduction

Presently before the Court are motions to dismiss Mr. Miller's Amended Complaint filed by Defendants Maxwell, Owens and PAC McConnell.[1] (ECF Nos. 49 and 57.)

For the reasons that follow, both motions will be denied.

## II. Background

### A. Procedural History

Mr. Miller, an inmate formerly housed at the Huntingdon State Correctional Institution (SCI-Huntingdon) in Huntingdon, Pennsylvania, commenced this action on February 9, 2014.[2] (ECF No. 1, Compl.) He named Paula Price, Physician Assistant

---

[1] The Department of Corrections (DOC) defendants, Maxwell and Owens, are represented by different counsel than PAC McConnell.

[2] Mr. Miller was released from prison in January 2015. (ECF No. 35.) He is
(continued...)

(PA) Mark McConnell and Dr. Tavaras as defendants. Shortly thereafter, Mr. Miller filed an Amended Complaint. (ECF No. 7, Am. Compl.)

Mr. Miller's Amended Complaint, filed March 17, 2014, consists of two (2) separate complaint forms and fifty-eight (58) pages of supporting exhibits that are not referenced in the Amended Complaint. (*Id.*) He named Mark McConnell, Lt. Maxwell, CO Owens, Paula Price, Sgt. Younker, Todd Bickell (former Superintendent of SCI-Huntingdon), "Head of the DOC/Camp Hill SCI", Dr. Tavares, the "DOC Health Care Provider", and "DOC Medical Staff" as Defendants.[3] (*Id.*)

On March 21, 2016, the Court granted Defendants' Younkers and Price motion to dismiss. Additional claims against other defendants were dismissed as well pursuant to the Court's authority under 28 U.S.C. § 1915(e)(2)(b). (ECF No. 44.) In the end, a sole remaining Eighth Amendment claim against Lt. Maxwell, CO Owens and PA McConnell was left. Service of the Amended Complaint was directed on these three Defendants as to Mr. Miller's claim that they were deliberately indifferent to his serious medical need when he was deprived of his leg brace for seven (7) days while confined to the Restricted Housing Unit (RHU). *See Miller v. Price*, No. 3:CV-14-0301, 2016 WL 1089155, at * 1 (M.D. Pa. Mar. 21, 2016).

**B.  Facts**

---

[2](...continued)
presently represented by counsel.

[3]  Due to a docketing error, only Paula Price, Dr. Tavaras and Sgt. Younker were identified as defendants. As a result, only these defendants were served with the Amended Complaint. *See* ECF No. 10. That error will be addressed and remedied *infra*.

Mr. Miller describes himself as "a person with a disability". (ECF No. 7, p. 3.) He is paralyzed and frequently experiences tremors on his left side. (*Id*. at p.13.) Mr. Miller was issued a MAFO[4] ankle brace at SCI-Camp Hill in April 2012. (*Id*. at p. 9.) When wearing his MAFO brace, Mr. Miller is capable of working and doing "laps" in the exercise yard. (*Id*. at p. 54.)

At approximately 1600 hours on Wednesday, October 23, 2013, Mr. Miller was admitted to the Restricted Housing Unit (RHU). At the direction of Lt. Maxwell, his leg brace was confiscated "until it cleared" security. He was, however, permitted to have it for "rec use only." (*Id*. at p. 10.) The following day when PA McConnell stopped by Mr. Miller's cell he advised PA McConnell of his "daily need" for the brace. (*Id*.) On Sunday, October 27, 2013, Mr. Miller sent a request slip to the medical department inquiring when his brace would be returned. (*Id*. at p. 11.) On Monday, October 28, 2013, Mr. Miller filed Grievance 482828 complaining about the confiscation of his brace and PA McConnell's failure to promptly return the brace. (*Id*. at p. 10.) The following day Mr. Miller was advised that "[t]he PA re-ordered your splint for another year." (*Id*. at p. 11.) Mr. Miller received his brace on Wednesday, October 30, 2013. (*Id*. at p. 3.)

### III. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion, the

---

[4] MAFO is an acronym for Molded Ankle-Foot Orthosis.

Court's role is limited to determining if a plaintiff is entitled to offer evidence in support of her claims. *See Semerenko v. Cendant Corp.*, 223 F.3d 165, 173 (3d Cir. 2000). The Court does not consider whether a plaintiff will ultimately prevail. *Id.* A defendant bears the burden of establishing that a plaintiff's complaint fails to state a claim. *See Gould Elecs. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000).

A pleading that states a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The statement required by Rule 8(a)(2) must " 'give the defendant fair notice of what the... claim is and the grounds upon which it rests.' " *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) (per curiam) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007)). Detailed factual allegations are not required. *Twombly*, 550 U.S. at 555, 127 S.Ct. at 1964. However, mere conclusory statements will not do; "a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Instead, a complaint must "show" this entitlement by alleging sufficient facts. *Id.* While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 - 50, 173 L.Ed.2d 868 (2009). As such, "[t]he touchstone of the pleading standard is plausibility." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).

The inquiry at the motion to dismiss stage is "normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and

evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

Dismissal is appropriate only if, accepting as true all the facts alleged in the complaint, a plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570, 127 S.Ct. at 1973, meaning enough factual allegations " 'to raise a reasonable expectation that discovery will reveal evidence of' " each necessary element. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556, 127 S.Ct. at 1965). "The plausibility standard is not akin to a `probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678, 129 S.Ct. at 1949. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679, 129 S.Ct. at 1950.

In deciding a motion to dismiss, the Court should consider the complaint, exhibits attached to the complaint, and matters of public record. *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)). The Court may also consider "undisputedly authentic" documents when the plaintiff's claims are based on the documents and the defendant has attached copies of the documents to the motion to dismiss. *Pension Benefit Guar. Corp.*, 998 F.2d at 1196. The Court need not assume that the plaintiff can prove facts that were not alleged in the complaint, *see City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 263 & n.13 (3d Cir. 1998), or credit a complaint's " 'bald assertions' " or " 'legal conclusions,' " *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902,

906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429-30 (3d Cir. 1997)).

**IV.     Discussion**

All defendants move to dismiss the Amended Complaint against them arguing that it fails to set forth a cognizable claim for deliberate indifference to a serious medical need against them.  (ECF Nos. 50 and 58.)   PA McConnell states that Mr. Miller fails to demonstrate his personal involvement in the confiscation or denial of his brace while in the RHU.  (ECF No. 58.)  Mr. Miller states his Amended Complaint states a viable Eighth Amendment claim against the remaining Defendants as evidenced by the Court's March 21, 2016 Order .  (ECF Nos.  51 and 59.)  Neither set of Defendants filed a reply brief in support of their motion to dismiss.

In order to establish an Eighth Amendment medical claim, a plaintiff must show "(i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." *Natale v. Camden Cty. Correctional Facility*, 318 F.3d 575, 582 (3d Cir. 2003).  *See also Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).

A prison official acts with deliberate indifference to an inmate's serious medical needs when he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan,* 511 U.S. 825, 837, 114 S.Ct. 1970, 1979, 128 L.Ed.2d 811 (1994).  A prison official is deliberately indifferent if he knows that a prisoner faces a substantial

-6-

risk of serious harm and fails to take reasonable steps to avoid the harm. *Id*. at 857, 114 S.Ct. at 1989.

A prison official may manifest deliberate indifference by "intentionally denying or delaying access to medical care." *Estelle*, 429 U.S. at 104 - 05, 97 S.Ct. at 291. Deliberate indifference to a serious medical need involves the "unnecessary and wanton infliction of pain." *Id*. Such indifference is manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, denial of prescribed medical treatment, a denial of reasonable requests for treatment that results in suffering or risk of injury, *Durmer v. O'Carroll*, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of permanent injury." *White v. Napoleon*, 897 F.2d 103, 109 (3d Cir. 1990).

Mere misdiagnosis or negligent treatment is not actionable as an Eighth Amendment claim because medical malpractice is not a constitutional violation. *Estelle*, 429 U.S. at 106, 97 S.Ct. at 292. "Indeed, prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners." *Durmer*, 991 F.2d at 67 (citations omitted). Any attempt to second-guess the propriety or adequacy of a particular course of treatment is disavowed by courts since such determinations remain a question of sound professional judgment. *Inmates of Allegheny Cty Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979), quoting *Bowring v. Goodwin*, 551 F.2d 44, 48 (4th Cir. 1977).

Mr. Miller, a person with a disability, suffers from some form of paralysis and experiences tremors on his left side, and is prone to falls. He has a previous history of falling at the institution and takes medication for chronic pain. As a result of his medical problems, a physician or other medical staff member, prescribed him a leg brace or

splint since 2012. With the leg brace he can exercise and work, without the brace Mr. Miller is unsteady and ambulates with difficulty and pain. Mr. Miller possessed the leg brace while housed in general population for at least a year prior to his placement in the RHU. Lt. Maxwell ordered the confiscation of his medically prescribed brace until it was "cleared" by security. Mr. Miller's brace was returned to him after seven (7) days. During this time his requests to CO Owens and PA McConnell to return his brace were denied. All Defendants are alleged to have knowledge that the denial of his medically prescribed brace caused him pain and discomfort.

The DOC Defendants rely on *Estien v. Showalter*, Civ. No. 1:CV-13-2474, 2014 WL 4916333 (M.D. Pa. Sept. 30, 2014) to support their argument that Mr. Miller's placement in the RHU justified the temporary denial of his brace until it cleared security. Prisoner Estien, an RHU inmate, was prescribed a brace and physical therapy by his surgeon following thumb surgery. However prison medical officials never provided either. *Id*. at *2. The DOC defendants in that case were successful in arguing at the motion to dismiss level that "there were likely legitimate penological reasons for denying the Plaintiff the brace while he was in the RHU. Further, RHU inmates have been denied canes and walkers because they contain metal which can be used to fashion a weapon." *Id*. at * 11 (citations omitted). Noting the deference courts must grant prison officials in the adoption and execution of policies necessary to preserve internal order and institutional security, the *Estien* court granted Defendants' motion to dismiss as to the denial of Mr. Estien's request for a brace. Unlike Mr. Estien, who never received a brace, Mr. Miller was issued a brace over a year before he entered the RHU. Lt. Maxwell confiscated medically prescribed treatment appliance for alleged security

concerns. Yet at the motion to dismiss stage, the seven day deprivation of this medical appliance, possibly prior to consultation with the medical department, demonstrates a plausible claim of deliberate indifference against the DOC Defendants. With respect to PA McConnell, who knew Mr. Miller's prescribed medical treatment (i.e. the brace) was altered by security, and Plaintiff's medical history which included chronic pain medication and falls, the Court cannot assume that the extent of risk to Plaintiff posed by the seven (7) day delay of his brace was not serious. Additionally, in Mr. Estien's case, plaintiff was involved in a prison fight which involved weapons resulting in his placement in the RHU thus raising additional security concerns with this individual. There are no such allegations surrounding the rationale for Mr. Miller's placement, or why staff agreed to allow him to posses the brace for recreation purposes while in the RHU, but not in his cell for seven (7) days. Additionally, Mr. Eistein sought the issuance of a thumb brace, while Mr. Miller sought the return of his brace. The medical need of Mr. Miller's brace was clearly established at the time it was confiscated. At this stage of the litigation and without further discovery, the Court cannot conclude that where a medically prescribed brace is withheld, even on a temporary basis, for security concerns does not rise to the level of an Eighth Amendment claim of deliberate indifference. Thus, Lt. Maxwell, CO Owens and PA McConnell's motion to dismiss Mr. Miller's Eighth Amendment claim, based on the alleged insufficiency of Plaintiff's Amended Complaint, will be denied.

     An appropriate Order follows.

                                       **/s/ A. Richard Caputo**
                                       **A. RICHARD CAPUTO**
                                     **United States District Judge**

**Date: August 4, 2017**