## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JASON MILLER,

    Plaintiff,

    v.

PAULA PRICE, et al.,

    Defendants.

NO. 3:14-CV-0301

(JUDGE CAPUTO)

### MEMORANDUM

Presently before me is the Motion for Summary Judgment (Doc. 65) filed by Defendant PA-C Mark McConnell ("PA-C").  Plaintiff Jason Miller ("Mr. Miller") commenced this action against various individuals and entities asserting violations of his rights while he was incarcerated at the Pennsylvania State Correctional Institution in Huntingdon, Pennsylvania ("SCI-Huntingdon").  The sole remaining cause of action in this litigation claims that PA-C McConnell was deliberately indifferent to Mr. Miller's serious medical needs when he was deprived of his medically prescribed leg brace for seven (7) days following his entry into the Restricted Housing Unit ("RHU").  PA-C McConnell now seeks summary judgment on that claim, arguing, *inter alia*, that the undisputed facts show that he was not deliberately indifferent to Mr. Miller's serious medical needs.  Because the evidence of record when viewed in the light most favorable to Mr. Miller establishes that PA-C McConnell was not deliberately indifferent to Mr. Miller's serious medical needs, the motion for summary judgment will be granted.

### I. Background

The facts are derived from PA-C McConnell's Statement of Facts, (Doc. 67, "Def.'s SMF"), and supporting exhibits.  (Doc. 65, Exs. "A"-"C", "Def.'s Ex.").[1]  Mr.

---

[1]    Local Rule 56.1 requires that a motion for summary judgment be supported "by a separate, short, and concise statement of the material facts, in numbered

Miller suffered a stroke in 2006 secondary to a brain fungal infection, which impaired his mobility. (*See* Def.'s SMF, ¶ 4). As a result, Mr. Miller was provided with a Left Molded Ankle-Foot Orthosis ("LMAFO"). (*See id*).

At approximately 4:00 p.m. on October 23, 2013, Mr. Miller arrived at the RHU. (*See id*. at ¶ 5; *see also* Ex. "B", 2). At that time, Mr. Miller's LMAFO was confiscated by correctional staff, but Mr. Miller was advised that his brace would be returned after it cleared security. (*See* Def.'s SMF, ¶ 5). Mr. Miller was also informed that the leg brace would be permitted for "rec use." (*See id*.).

The following morning, October 24, 2013, Mr. Miller put in a sick call request regarding a rash that had not resolved. (*See id*. at ¶ 6). Mr. Miller was seen by PA-C McConnell in response to that request. (*See id*.). During that visit, they spoke about his LMAFO, at which time Mr. Miller informed PA-C McConnell that the brace was required daily. (*See* Ex. "C", 1). In the progress notes for that day, PA-C McConnell wrote Mr. Miller was to "cont. AFO splint." (*See* Def.'s SMF, ¶ 6). PA-C McConnell also signed an Order form that day for Mr. Miller to receive his leg brace and to be reassessed again in one year. (*See id*.). Additionally on October 24, 2013, PA-C McConnell completed a "Health Care Item Receipt" indicating that Mr. Miller could continue to have his splint for a year. (*See id*.).

paragraphs, as to which the moving party contends there is no genuine issue to be tried." M.D. Pa. L.R. 56.1. A party opposing a motion for summary judgment must file a separate statement of material facts, responding to the numbered paragraphs set forth in the moving party's statement and identifying genuine issue for trial. *See id*. Unless otherwise noted, the factual background herein derives from PA-C McConnell's Rule 56.1 statement of material facts. Mr. Miller did not file a response to the statement of facts, so the facts set forth by PA-C McConnell are deemed undisputed. *See* M.D. Pa. L.R. 56.1; *see also Weitzner v. Sanofi Pasteur Inc.*, 909 F.3d 604, 613 (3d Cir. 2018) ("a district court's application and interpretation of its own local rules should generally be reviewed for abuse of discretion."). I note, though, that Mr. Miller does not appear to contest the facts as set forth by PA-C McConnell in his opposition brief. Rather, Mr. Miller disputes that PA-C McConnell is entitled to judgment as a matter of law on these facts.

Mr. Miller's brace was not immediately returned by security. (*See id*. at ¶ 7). So on October 27, 2013, Mr. Miller submitted a "Request to Staff Member" inquiring about the status of his leg brace. (*See id*.). On October 29, 2013, Mr. Miller received a response stating that "[t]he PA re-ordered your splint for another year. You will continue to use the one currently in your possession." (*See id*. at ¶ 8; Ex. "C", 1).

The next day, October 30, 2013, Mr. Miller made another sick call request, and he was seen that day by PA-C McConnell. (*See* Def.'s SMF, ¶ 9). According to the progress notes, Mr. Miller was "requesting his splint be given to him. He reports it's in property." (*Id*.). Immediately after his visit with Mr. Miller, PA-C McConnell discussed Mr. Miller's concern with nursing. (*See id*. at ¶ 10). Nursing assured PA-C McConnell that security would be advised to return the brace provided it was permitted in the RHU. (*See id*.). Later that day, the leg brace was cleared by security and returned to Mr. Miller. (*See id*. at ¶ 11).

Mr. Miller submitted a grievance related to these events on October 28, 2013. (*See id*. at ¶ 13). That grievance provided:

> Arriving at the RHU very near the 1600 hrs count on 10/23/13. Upon orders by Lt. Maxwell also in presence of CO's Stanton and Watt to turn over my LMAFO until it cleared. 10/24/13 PAC McConnell stopped at cell 1014 on GC pod for sick call and asked me if I needed my brace. "Yes" as I am permanently disabled it is needed daily. 10/25/13 before hearing for current misconduct I requested to officer doing escort my need for my brace. That was around 11:00am. They didn't return CO Kyle or the other CO. 10/26/13 I asked Lt. Gill while doing "punch" why my LMAFO wasn't given to me. He said I was able to have it for rec use only.

(Exhibit B" at p. 2). On November 19, 2013, Captain Smith stated in his "Initial Review Response" that "you have received your brace after it had been cleared by security. As you now have the brace in your cell, this grievance is resolved." (Ex. "B", 3).

Mr. Miller appealed that decision. (*See id*. at ¶ 15). The Facility Manager denied the appeal, finding that the amount of time that Mr. Miller was without his

brace was not "unreasonable" as "security staff needed to approve your brace." (Id. at ¶ 16).

The decision of the Facility Manager was appealed by Mr. Miller to the Secretary's Office of Inmate Grievances & Appeals. (*See id*. at ¶ 17). The Final Appeal Decision by the Secretary's Office of Inmate Grievances & Appeals concluded that Mr. Miller received his brace "as soon as it was verified with security," therefore the response to Mr. Miller's grievance was upheld. (*Id*. at ¶ 18).

Based on the foregoing, Mr. Miller filed this action *pro se* on February 9, 2014.[2] Following my screening of the Amended Complaint and resolution of multiple motions to dismiss, the only claim that proceeded to discovery was Mr. Miller's Eighth Amendment claim that Lt. Maxwell, CO Owens, and PA-C McConnell were deliberately indifferent to his serious medical needs. (*See* Docs. 60-61, *generally*).

Following the close of discovery, PA-C McConnell filed the instant motion for summary judgment. (*See* Doc. 65, *generally*).[3] Along with his motion, PA-C McConnell submitted a supporting brief and a factual statement as required by Local Rule 56.1. (*See* Docs. 66-67, *generally*). Mr. Miller timely filed a brief in opposition to PA-C McConnell's motion for summary judgment, (*see* Doc. 71, *generally*), but, as stated, did not submit an opposing factual statement as required by the Local Rules. PA-C McConnell timely filed a reply brief in further support of his motion for summary judgment. (*See* Doc. 73, *generally*). PA-C McConnell's motion for summary judgment is thus fully briefed and ripe for disposition.

## II. Legal Standard

Summary judgment shall be granted "if the movant shows that there is no

---

[2]     Mr. Miller subsequently retained counsel in February 2016. (*See* Doc. 41, *generally*).

[3]     Mr. Miller voluntarily dismissed his claims against Lt. Maxwell and CO Owens. (*See* Docs. 74-75, *generally*).

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A court may grant a motion for summary judgment if, after it considers all probative materials of record, with inferences drawn in favor of the non-moving party, the court is satisfied that there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Chavarriaga v. N.J. Dep't of Corrs.*, 806 F.3d 210, 218 (3d Cir. 2015) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 330, 106 S. Ct. 2548, 2556, 91 L. Ed. 2d 265 (1986); *Brooks v. Kyler*, 204 F.3d 102, 105 n.5 (3d Cir. 2000)). "A fact is 'material' under Rule 56 if its existence or nonexistence might impact the outcome of the suit under the applicable substantive law. A dispute over a material fact is 'genuine' if 'a reasonable jury could return a verdict for the nonmoving party.'" *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986)). "In determining whether the dispute is genuine, the court's function is not to weigh the evidence or to determine the truth of the matter . . . ." *American Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 587, 581 (3d Cir. 2009) (citing *Anderson*, 477 U.S. at 248-49, 106 S. Ct. 2505).

The moving party bears the initial burden to identify "specific portions of the record that establish the absence of a genuine issue of material fact." *Santini*, 795 F.3d at 416 (citing *Celotex*, 477 U.S. at 323, 106 S. Ct. 2548, 2553). If this burden is satisfied by the movant, the burden then "shifts to the nonmoving party to go beyond the pleadings and 'come forward with specific facts showing that there is a genuine issue for trial.'" *Id*. (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986)). The nonmovant's burden is not satisfied by "simply show[ing] that there is some metaphysical doubt as to the material facts." *Chavarriaga*, 806 F.3d at 218.

### III. Discussion

According to Mr. Miller, PA-C McConnell was deliberately indifferent to his serious medical needs when he denied, delayed and/or failed to ensure the prompt

return of the leg brace following Mr. Miller's entry into the RHU in October 2013. Mr. Miller's claim, brought pursuant to 42 U.S.C. § 1983, is for an alleged violation of the Eighth Amendment to the United States Constitution's prohibition on "cruel and unusual punishment." U.S. Const. amend. VIII.

The Eighth Amendment "requires prison officials to provide basic medical treatment" for those "incarcerated." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976)). To establish an Eighth Amendment claim based on inadequate medical care, an inmate must show "(i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." *Natale v. Camden Cty Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003). A plaintiff must make both an "objective" showing that the deprivation was "sufficiently serious," as well as a "subjective" showing that the defendant acted with "a sufficiently culpable state of mind." *See Montgomery v. Pinchak*, 294 F.3d 492, 499 (3d Cir. 2002) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991)).

It is not disputed that Mr. Miller had a serious medical need requiring the use of the leg brace. PA-C McConnell's treatment orders and notes make clear that use of the brace was Mr. Miller's prescribed medical treatment. The parties instead debate whether PA-C McConnell acted with deliberate indifference to that serious medical need.

As PA-C McConnell sees it, the record is devoid of evidence that he was deliberately indifferent to Mr. Miller's need for his leg brace. The record shows, says PA-C McConnell, that he made efforts to ensure the prompt return of Mr. Miller's brace once he was made aware that it was confiscated and later once he learned that the brace had still not yet been returned. Specifically, on October 24, 2013, the day PA-C McConnell learned that Mr. Miller's leg brace was confiscated when he arrived at the RHU, he issued an Order form for Mr. Miller to be provided his leg brace and for reevaluation in one year. Also that day PA-C McConnell completed a "Health

6

Care Item Receipt" for Mr. Miller to have use of the leg brace for at least one year. Mr. Miller's brace, however, was not immediately returned. Six days later, on October 30, 2013, PA-C McConnell saw Mr. Miller in response to another sick call. After learning that Mr. Miller had yet to receive his leg brace, PA-C McConnell spoke with nursing about this issue. The leg brace was cleared by security and returned to Mr. Miller the same day. In PA-C McConnell's view, these undisputed facts underscore the complete absence of deliberate indifference to Mr. Miller's medical needs. Rather, the record reflects that he "advocated on behalf of Plaintiff to ensure Mr. Miller received his leg brace as quickly as possible, notwithstanding the security concerns of the prison." (Doc. 66, 12; *see also* Doc. 73, 2 ("the undisputed facts of record show that Mr. McConnell did not ignore, disregard, or intentionally delay the return of Plaintiff's brace.")).

While Mr. Miller does not dispute these facts, he argues that they demonstrate that "PA McConnell was personally responsible in denying and/or delaying the return of the leg brace," and this failure "to respond to the medical requests demonstrates deliberate indifference." (Doc. 71, 6). In other words, Mr. Miller argues that since PA-C McConnell was aware that the leg brace was confiscated but he did not ensure that the brace was returned, he was deliberately indifferent to Mr. Miller's serious medical needs based on the seven day deprivation of the brace.

Because the record demonstrates that PA-C McConnell was not deliberately indifferent to Mr. Miller's serious medical needs, summary judgment is warranted on the sole remaining claim. "Deliberate indifference is a subjective standard of liability consistent with recklessness as that term is defined in criminal law." *Natale*, 318 F.3d at 582. This means that Mr. Miller must show that PA-C McConnell "acted or failed to act despite his knowledge of a substantial risk of serious harm." *Farmer v. Brennan*, 511 U.S. 825, 842, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).

Mr. Miller does not make such a showing in the matter *sub judice*. Rather, the undisputed evidence establishes that after learning that Mr. Miller's brace was

confiscated upon his entry into the RHU, PA-C McConnell completed an Order form indicating that Mr. Miller was authorized to have his brace and he would be reevaluated again in one year. Six days later, PA-C McConnell visited Mr. Miller in response to a sick call request and he learned that the brace had not yet been returned. Immediately thereafter, PA-C McConnell spoke with nursing and security was contacted regarding the status of the brace. The brace was returned to Mr. Miller that day. These facts do not support a finding of deliberate indifference. At most, Mr. Miller has pointed to evidence of negligence by PA-C McConnell in failing to follow-up with him for six days. *See*, *e.g.*, *Norwood v. Ghosh*, 723 F. App'x 357, 366 (7th Cir. 2018) ("The record here might support a claim that P.A. Williams was negligent in failing to supervise the follow-through on her orders better, but we do not see a basis for finding that her actions (or failures to act) amounted to deliberate indifference."); *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir. 1999) (physician's failure "to follow-up to ensure that his orders were carried out might constitute negligence, not the requisite deliberate indifference."). But, proof of negligence does not make out a deliberate indifference claim. *See*, *e.g.*, *Pearson v. Prison Health Serv.*, 850 F.3d 526, 535 (3d Cir. 2017) ("the mere receipt of inadequate medical care does not itself amount to deliberate indifference - the defendant must also act with the requisite state of mind when providing that inadequate care."); *Durmer v. O'Carroll*, 991 F.2d 64, 67 (3d Cir. 1993) (explaining that deliberate indifference requires something "more than negligence"). PA-C McConnell was not deliberately indifferent to Mr. Miller's serious medical needs, so summary judgment will be entered in his favor on the remaining Eighth Amendment claim. *See*, *e.g.*, *Hampton v. Wetzel*, No. 14-1367, 2017 WL 954050, at *16 (M.D. Pa. Mar. 10, 2017) (granting summary judgment on an Eighth Amendment inadequate medical care claim based on the confiscation of an inmate's back and wrist braces).

## IV. Conclusion

For the above stated reasons, the motion for summary judgment filed by

Defendant PA-C McConnell will be granted and judgment will be entered in his favor on the sole remaining claim in this action.

An appropriate order follows.


January 17, 2019                          /s/ A. Richard Caputo
Date                                      A. Richard Caputo
                                          United States District Judge